**In re Application of TECHNOSTROYEX-PORT, a Foreign Economic Association Organized Under the Laws of the Russian Federation, Petitioner.**

No. M19–116 (Part I).

United States District Court,
S.D. New York.

May 6, 1994.

Mark J. MacDougall, Shari L. Fleishman, Michelle L. Gilbert, Akin, Gump, Strauss,

Hauer & Feld, L.L.P., Washington, DC, and David Brecher, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York City, for petitioner.

Louis P. Sheinbaum, New York City, for respondents.

### OPINION

GRIESA, Chief Judge.

This is a petition to obtain discovery in aid of arbitration proceedings now pending in Moscow and Stockholm. Petitioner Technostroyexport ("Technostroy") is a foreign economic association organized under the laws of the Russian Federation. Technostroy has initiated an arbitration in Moscow against International Development and Trade Services, Inc. ("IDTS"). IDTS has brought an arbitration proceeding against Technostroy in Stockholm.

IDTS is a New York corporation. Its president is Edith Reich. Brigitte R. Jossem–Kumpf is a director and sole shareholder of IDTS. Both of these persons maintain residences and offices in New York.

The present petition seeks to obtain documents from IDTS and to obtain the deposition testimony of Reich and Jossem–Kumpf for use in the arbitration proceedings. On January 6, 1994, based on the ex parte application of Technostroy, Judge Mukasey, sitting in Part I of this court, signed an order permitting the issuance of a subpoena duces tecum to IDTS and deposition subpoenas to Reich and Jossem–Kumpf. The subpoenas were duly served.

On February 18, 1994 respondents IDTS, Reich and Jossem–Kumpf filed a motion seeking to have the court vacate the January 6 order, quash the subpoenas, dismiss the petition, and refer the parties to the pending arbitration proceedings. Technostroy has moved to compel compliance with the document subpoena, taking the position that it is not required to affirmatively move to enforce the testimony subpoenas. In any event, Technostroy seeks to enforce the January 6 order and all the subpoenas. Hearings were held on March 8 and March 15 before Judge Griesa, who was then the Part I judge and is ruling on the pending motions.

The court grants the motion of IDTS and denies Technostroy's motion.

### FACTS

The problems involved in the arbitration proceedings involve certain contracts by the Russian association to sell minerals to IDTS. Also involved is an agreement by the Russian association appointing IDTS and another company as agent for the sale of minerals. The Russian association will be referred to in this opinion as Technostroy, although a different name may have been used in at least some of the contracts, and it may be that there is some question about whether Technostroy is actually the successor to that contracting Russian entity. However, this issue is not involved in the present motions. The arbitration proceedings are between Technostroy and IDTS.

In the Moscow arbitration Technostroy claims that IDTS has purchased large amounts of minerals from Technostroy and has refused to pay for them. Technostroy bases its claims on seven written sales contracts, and asserts that IDTS owes approximately $172 million. It appears that one crucial issue is whether the written contracts were amended orally to reduce the total price. Another issue is whether IDTS has made payment of some $58 million. All seven of the sales contracts provide for arbitration in Russia. The agency contract provides for arbitration in Stockholm. The latter circumstance has resulted in IDTS bringing an arbitration proceeding in Stockholm and asserting claims against Technostroy under the agency agreement and two of the sales contracts. Technostroy has raised jurisdictional objections in the Stockholm arbitration.

### THE ISSUES

In the petition to this court, Technostroy asserts that the nature of the issues in the arbitration proceedings make it imperative to obtain discovery from respondents IDTS, Reich and Jossem–Kumpf. In addition to the need for obtaining relevant documents, there is the need, according to Technostroy, to obtain the testimony of Reich and Jossem–Kumpf, who were both intimately involved in the relevant transactions and negotiations.

Respondents have a number of arguments as to why this court cannot properly order

discovery in aid of the foreign arbitrations. Basically, respondents argue that the parties should be relegated to applying to the arbitration tribunals for permission to take discovery.

Both Technostroy and respondents have submitted sworn statements from experts on Russian and Swedish law. Respondents' experts concede that, under certain circumstances, discovery may be available in arbitration proceedings in those countries. But they assert that application must be made to the arbitrators, and that court intervention can occur only in the Russian and Swedish courts, and then only to enforce the ruling of the arbitrators. Technostroy's experts, on the other hand, assert that the provisions relied upon by respondents' experts apply only to situations where the discovery is sought in Russia or in Sweden and do not touch the question of discovery sought in foreign countries. Therefore, according to Technostroy's experts, there is no bar under Russian or Swedish law preventing Technostroy from going directly to a United States court and obtaining an order for discovery in the United States.

Technostroy relies upon 28 U.S.C. § 1782(a), which gives a Federal District Court the authority to obtain testimony or document production "for use in a proceeding in a foreign ... tribunal." Respondents deny that § 1782 is applicable.

At the hearing of March 8, the court attempted to have the discovery dispute resolved by agreement. While never conceding that this court has the power to order discovery, respondents referred to the practical problem, that if there is to be discovery it should be two-way, and there is no assurance that respondents can obtain discovery of Technostroy in Moscow.

On March 15 Technostroy stated to the court that it would consent to submit to appropriate discovery in Russia. Technostroy asserted that there was no bar to such voluntary discovery under Russian law.

Despite the assurances by Technostroy, respondents refused to agree to discovery, and maintained their legal argument that the court could not require them to submit to discovery.

## DISCUSSION

28 U.S.C. § 1782(a), on which Technostroy relies, provides in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person....

Technostroy argues that an arbitrator or an arbitration panel is a "foreign ... tribunal" within the meaning of § 1782(a) and that the plain language of the statute empowers a Federal District court to order discovery in the United States for use in connection with foreign arbitration proceedings. Technostroy relies on a recent Second Circuit decision holding that § 1782 empowers a court to obtain discovery even where the rules of the foreign tribunal do not provide for such discovery. *Application of Aldunate*, 3 F.3d 54 (2d Cir.1993). Also, it has been held that § 1782 does not require prior resort to the foreign tribunal. *In Re Malev Hungarian Airlines*, 964 F.2d 97 (2d Cir.1992).

■ The court is of the view that an arbitrator or arbitration panel is a "tribunal" under § 1782. The court further believes that, if Technostroy had obtained a ruling from a foreign arbitrator that discovery should take place, the court would be empowered under § 1782 to enforce that ruling in the United States. However, Technostroy has made no effort to obtain any ruling from the arbitrators. It has come directly to the Federal District Court. The court concludes that, under these circumstances, it would be improper to order the discovery requested.

■ It appears to be generally accepted that the rules and procedures in arbitration are intended to be radically different from the rules and procedures in the courts. Arbitrators govern their own proceedings, generally without assistance or intervention by a court. Whether or not there is to be pre-hearing discovery is a matter governed by the applicable arbitration rules (as distinct from court rules) and by what the arbitrators

decide. It has been expressly held that a Federal District Court has no power to order discovery under court rules where the matter is being litigated in an arbitration. *Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Co.*, 20 F.R.D. 359 (S.D.N.Y.1957). *See also Penn Tanker Co. of Delaware v. C.H.Z. Rolimpex Warszawa*, 199 F.Supp. 716 (S.D.N.Y.1961). However, there is authority that a court can enforce a discovery ruling of an arbitrator. *Western Employers Ins. Co. v. Merit Ins. Co.*, 492 F.Supp. 53 (N.D.Ill. 1979).

■ The applicable provisions of Russian and Swedish law make it clear that questions about the obtaining of evidence in arbitration proceedings are to be determined by the arbitrators.

Rule 30 of the Rules of the Arbitration at the USSR Chamber of Commerce and Industry provides in part:

> The parties must prove circumstances relied on by them in support of their demands or objections. The arbitral tribunal may require the parties to present other evidence. It also may, at its own discretion, direct that expert examination be conducted and obtain evidence from third parties as well as summon and hear witnesses.

Although the USSR no longer exists, it appears that Rule 30 applies under current Russian law. In addition, the Law of the Russian Federation on International Commercial Arbitration contains the following provisions:

> Article 5. Extent of Court Intervention
> In matters governed by this Law, no court intervention shall take place except where so provided in this law.
> Article 27. Court Assistance in Taking Evidence
> The arbitral tribunal or a party with the approval of the arbitral tribunal may request from a competent court of the Russian Federation assistance in taking evidence. The court may execute the request within its competence and according to its rules on taking evidence, including court orders.

As to the Swedish arbitration, Section 15 of the Swedish Arbitration Act provides:

> Unless the parties otherwise provide, the arbitrators may take steps in order to promote the investigation of the matter, such as summoning a party or an expert or any other person to attend for examination, or call upon a party or any other person in possession of a written document or other object, which may be assumed to have importance as evidence, to produce the document or object. The arbitrators may not make orders on penalty of a fine, nor use other means of constraint, nor may they administer oaths or truth affirmations.
> If a party wishes that a witness or an expert should be heard in court or that a party should be examined there on truth affirmation or that an order should be made for a party or any other person to produce as evidence a written document or an object on penalty of a fine, he shall apply to the District Court in whose area the person is present who is to be heard or otherwise affected. If the arbitrators have considered the procedure necessary, and if the requisite information is made available, the court shall arrange for the examination or issue an order on penalty of a fine, provided that there is no legal obstacle to such procedure. The rules on evidence taken otherwise than at the trial in an ordinary action shall, to the extent relevant, apply to the procedures referred to above.

These provisions do not literally refer to "discovery." They refer broadly to the obtaining of evidence. However, both Technostroy and respondents agree that arbitrators in both Russia and Sweden have the power to order pre-hearing discovery. It is clear that, once an arbitration panel has ruled that there should be discovery, a Russian or Swedish court can enforce that ruling if necessary.

There is, of course, no provision for resort to a foreign court. Technostroy argues that this circumstance enables Technostroy to come directly to a court in the United States to obtain discovery, without any prior resort to the arbitrators in Russia or Sweden.

The court disagrees. The Russian and Swedish provisions of law just quoted make it clear that in those countries it is the arbitrators, and not the courts, who are to decide the question of what discovery is to be obtained in arbitration proceedings. Although

courts in Russia and Sweden are able to enforce the rulings of the arbitrators, parties to arbitrations in those countries cannot bypass the arbitrators and go directly to court.

This basic principal of law, which is consistent with United States law, should be honored in determining the applicability of 28 U.S.C. § 1782. There is nothing in the wording of § 1782 which prevents this. Indeed, the statute states that a District Court "may" act. Application of § 1782 is a matter left to the sound discretion of the court. *Aldunate,* 3 F.3d at 59. For these reasons, the court concludes that the ex parte order of January 6, 1994 and the subpoenas issued thereunder must be vacated. This ruling is without prejudice to a future application based on the ruling of Russian or Swedish arbitrators.

SO ORDERED.